final case of the morning is 117 696 in region Edmonds are the parties ready to proceed you may proceed your honors good morning counsel my name is Jerome Larkin I represent the appellant in this matter may it please the court there are three issues framed for this court this morning in the Edmonds case one is arises from the Caravitas case and that's the extent to which a breach of a common law duty might inform or be a means of proving a violation the second is whether the review board erred in overturning the decision of the hearing board that certain of mr. Edmonds conducts and statements constituted a misrepresentation in violation of the rule and third what sanction might be finds misconduct I'd like to to begin if I may with the falsity question and the hearing board made very specific findings for a full hearing on this matter where all parties were heard made the opportunity to observe carefully all evidence before it essentially in three counts count to count three and count six the the hearing board found that the respondent had engaged in misrepresentation in counts two and three to essentially conceal from the Sloan trust beneficiary the true status of the investments that he was holding as trustee for that trust in the in count six there is a finding that arises from the same basic investments that relates to a a client Shirley Bowers in a hundred thousand dollar transaction may I back up a bit John Sloan was a lawyer in Peoria as far as I can tell from the record he must have practiced for 60 years and he amassed a certain amount of money and and it was 3.8 million from all sources when he did pass away on February 5th of 2000 he was a 1925 graduate of st. Mark's Church school in the Peoria area and he was fond of that and he reached out to mr. Edmonds responded in this case a fellow parishioner of st. Mark's and asked that he would prepare testamentary documents those documents called for a a will which poured over into a trust and mr. Edmonds created those documents with the assistance of a then disciplined lawyer mr. Lance Hanna was a financial advisor at American Express the documents called for all of the money we poured into the trust and mr. Sloan his life and then later mr. Edmonds would serve as trustee with the goal of benefiting the church and the school after and during mr. Sloan's lifetime the properties were invested in mutual funds and very little else blue-chip type investments after mr. Sloan passed on February 5th of the year 2000 mr. Edmonds took on the role of trustee where he had prior been lawyer for mr. Sloan he also took on the role as executor of the estate and appeared as a lawyer in the estate and billed for his legal services as counsel in the estate so we had two roles there mr. Hanna and the respondent began a plan of developing an investment strategy here I use those words hopefully carefully the strategy developed to be though that all of this money is 3.8 million dollars that have been safely parked in a American Express account with mutual funds was transferred to a oil and gas exploration energy company in Canada called range energy why that matters because certainly our breaches of fiduciary duty that arise from this or fiduciary duties at least that arise from this back is that that the whole strategy to invest in that way was by respondents own testimony at hearing a terribly bad judgment witness after witness testified that to that one person who was also a director of it range at some point said this was a highly risky investment he knew it it was a little piece of his portfolio that's the type of investment at once and we wouldn't be here for a bad investment case I don't think the court is disciplined so for a bad investment as a fiduciary but it sets the table for understanding of the st. Mark's the sole beneficiary of the trust and respondent recognized that was his duty to protect those assets and he said in a letter to the first pastor father Reese my job is to morally and legally to administer this the way John Sloan wanted to administer for the benefit of the kids of st. Mark's the 3.8 million dollars put into a a very risky venture a Canadian venture and it quickly developed many problems liquidity after about three years of paying principal and income to st. Mark's to help sustain the school there was no money to make those payments to the school school relied upon them and the evidence in the record is and this is what the hearing board saw is that respondent used his own money and personal money of mr. Hannah in a very convoluted way to send money to the school and the panels that there's no other reason this would have been done except for hide from the school the fact that these investments didn't turn out very well that's count to and at some point the church kept asking some questions in 2005 there wasn't enough money at some points as well and another pastor Henderson got involved and eventually there was a meeting between respondent and father Henderson and committee councils and mr. Hannah was present and there was this August 5th report that's out in the record and in that report the document prepared by mr. Hannah but purporting to come from respondent basically said that this trust is of good value and it hadn't degraded since 9-11 it is coincidence today that is 9-11 again some 13 years after the the stock market event and the national tragedy that mr. that's a letter referred to but in fact the trust assets had degraded mr. Edmonds and mr. Hannah had been out and about getting money through a production sharing agreement and over two million of the Sloan monies were provided for that vehicle range was in default of that very quickly and responded as they're representing the fund in communications with range to try to fix it eventually responded hears that a lawsuit was without his knowledge by mr. Hannah and Lynn Biggs another investor that gave his clients in that PSA including the trust a 14 million dollar Canadian dollar judgment I can't imagine what I would think as a lawyer if someone sued on behalf of my clients so I could be happy there might be a judgment but it was very clear from the record the judgment was there to forestall other creditors of range and it was an agreed deal between mr. Hannah who was then CEO and whoever authorized the suit but one could imagine what you think of the investment and range when that kind of a shenanigan happens respondent personally was involved in a forbearance degree where his clients including the trust that money through PS the PSA agreed to forbear and collection of 14 million dollars and there if they wanted to collect their option was to take installment payments two of them for two million dollars pain it seems very odd to me it appears that most of what was being done here was to prop up range or Hannah had gone from CFO CEO Lynn Biggs who was an investor who testified said only when he invested in it was risky when he got there in the early 2000s he saw there was no cash in the company and the production fields were not as good as he had hoped and he got out and respondent agreed again as part of his role within representing the PSA to a payment from range cash strapped to bigs for about 500,000 so during all this time leading up this August 5th letter where it's all clear the investments are good it's clear they only they were not only not good but the respondent knew it so those that just in the hearing board found that was dishonest and I think that that finding is correct and I think the review board erred by reversing that finding did the hearing board find that the breach of fiduciary duty in this case involved dishonesty or conduct it was that an actual finding they did find there was a breach of fiduciary duty based on dishonesty or conduct well I think that the the panel then this is pre-karavitas for this court's opinion in karavitas the panel was keenly aware that respondent had a duty to communicate with st. Mark's as the trust beneficiary both under fiduciary duties and statutory duties and he was fully inadequate into having done that so that's the linkage and it is Bowers is much the same I don't want to belabor the fact but it was another PSA client who ended up investing $100,000 being told it was interest when Hannah says was just another at-risk investment and she netted out of $100,000 20 when she was told by letters from responded it was a 10% return of interest on her investment the conduct I've described is found by the hearing board clearly justifies their finding that this is dishonest what I'd to do is move towards the karavitas issue a bit we understand clearly from this court's opinion in karavitas that a common law duty breaches are not independent and sole basis for discipline be it conversion in a breach duty or any other duty that might help to inform a charge of misconduct and indeed while this case was charged and tried and actually if the review board opinion in this case was in parallel with karavitas the record in this case shows findings of misconduct rule violations where the panel questioned as was used the breaches as part of the analysis that that resulted in the conclusion that violated that there was a dishonesty finding and dishonesty obviously strikes at the core of who we are as lawyers honesty is required it's a fitness required I want to spend a minute on sanction the hearing board before you go there does karavitas require that there be a violation of a specific rule of professional conduct or does it require that there be an attorney-client relationship and a violation of a rule it requires that there be a rule of conduct violation and a point a four is the dishonesty charge and many times that arises in non-practice environments but in this case if this is this case did arise from the practice started with the testamentary plan respondents lawyer for the trustee he becomes the trustee and fulfills the plan he created for mr. Sloan he is the executor is the lawyer for the executor and he also is the lawyer of that PSA fund didn't the basis that there was no attorney-client relationship alleged in regard to the violation of the breach of duty they did your honor and I think that is a timing issue they didn't have the benefit of karavitas this court's opinion perhaps the Review Board its terminology may not have done what it meant exactly I doubt the reward thinks that generally outside of a discipline context one needs to have a established an attorney-client relationship in order for it to be a breach of fiduciary duty that just would not be the law I think what they were arguing to this court is that for there to be a violation of a of a duty like the fiduciary duty in a discipline case it should arise from the practice of law and I don't think her Vitas this court's opinion provides for that I think what the court has done is very carefully limit what cases we might take from outside the practice setting and did so by saying air DC you may not bring a case if it doesn't involve a rule violation but you also may to inform and to prove a charge reference other violations of the law I could perceive a insider trading law someone it precludes insider trading lawyers have a discipline because they lie but part of the underlying facts of the and they passed it on to someone else and that was inherently deceitful and criminal so I answered your question justice Kramer yes thank you the understanding I think that the the hearing board recommendation of a year suspension is certainly within range we had recommended two years at hearing of course at review having cut reverse findings the majority was recommending a 60-day suspension and a minority dissenter who found some of the desires conduct recommended a 90-day suspension we would recommend that this court approve and confirm or adopt the hearing board findings and its recommendation for sanction thank you here may please the court mr. Larkin my name is Tom McGarry and I represent the respondent happily Jay Edmonds long-standing a lawyer since 1975 Illinois who really cared a lot about st. Mark's and was selected by mr. Sloan because he was very loyal to the school mr. Sloan was a lawyer who who set up his trust it was an irrevocable trust that he was the trustee at the beginning mr. Sloan invested in range energy during his lifetime now I'd like to answer justice question no on the question of whether or not the breach of fiduciary duty was based on dishonesty the answer is no and this case was charged as a breach of fiduciary duty inside and out black stock and barrel that was the whole case the chair of the panel who I'm sure is a very experienced lawyer and trust and felt that we should brief the application of the trustees act in this case the charitable trust act it was all put into the case into the soup and the entire case was about a terrible breach of fiduciary duty based on putting 88 percent of the charitable trust in these ventures the administrator was extremely careful in his wording because he'd never he described the the assets as there's no evidence of the value of the assets not any and that was really important to the review board in determining whether the 2005 report was deceitful because there was no proof what the actual value even though there was a civil case going at the same time which could have resolved questions of valuation what about things like self funding the trust disbursements and and representing himself as the author of the inaccurate 2005 report I think it was to st. Mark's I mean did they smack more of in deceit rather than incompetence or I think that I had we had a trustee who was struggling with how to respond in the investment advisor was writing his information so he was and I think there were mistakes made but there was no dishonest intent and frankly on the 2005 report it would have to look at that but it was a hand it into the self-funding of the trust as first the self-funding well Hannah paid some of talk about that in a different way not self-funding of the trust what he did was he wanted to make sure that because it was illiquid that the church got money so he went into his own pocket and Hannah he made I'm sorry mr. because it was illiquid oh it was cash for because it was invested in inchoate rights contracts agreements oil wells and sharing agreements there is a pretty widespread portfolio of things that yes were speculative and mr. Hansen who was the chairman of the panel I think was grading his performance as a trustee and finding that you know this was an improved in provident investment under the prudent trustee you know standards was that was the church apprised of what exactly was happening the church actually knew along the way that mr. Edmonds had invested in in the oil and gas business they did not know the full extent of that and and so when the parish council met and wanted to do an insight an investigation as to the status of the trust they had their own people in the parish who were lawyers prepare an investigation contact the trustee and then he reported back in the reports and evidence in this case that mr. Edmonds had plenary powers as trustee did not have to do an accounting could enter into the forbearance agreement could enter into contracts could under the powers of the trustee forgive debts or lawsuits and take all the actions he did so basically they went back to the parish inside their own board and said well the trustee is actually doing what he's empowered to do in this situation mr. Edmonds so but what about what about the self-funding in the money I mean didn't they given the idea that this was coming from the investment isn't that you know justice they the members of the board testified and they testified in the hearing that they were not deceived they never established something that was deceitful in other words they now apprised of all the facts they had a lawsuit civil suit going they had the disciplinary case an investigation and when they took the stand they never testified that mr. Edmonds told them anything that wasn't true so it's a matter of the proofs in this case and this is why we so strongly object to the findings of dishonesty at the hearing board is because they were based only on inferences and and and from a bad situation of a cash for charitable trust so I was going to say that in this case I think Cara Vidas is so important here and it covers this case I could come up rather than dealing with these questions of 8.5 or 8.4 a4 say everything's covered under Cara Vidas it is because in Cara Vidas the the mr. Cara Vidas was self-dealing and this court refused to find an inference from self-dealing of dishonesty and I I really believe and I think this court does inconsistency I'm sure the administrator does too in in the administration of discipline I want just get back to a couple of the specifics that the authoring the letter right I mean I understand what you're saying saying well he was relying upon Hannah and but he's representing right to st. Mark's that it's his report where if he had said by the way this is what I'm writing to you today is as a result of what so-and-so told me right somebody presumably could say well what does he know can we you know we'll talk to you about it is that no that's a good question and and I don't want to mistake the record there's a lot of facts here but mr. Hannah was invited to the meeting with the pastor mr. Edmonds really couldn't explain something so he said may I bring the investment advisor so he came and was there at least for a half-hour meeting where there was questions and answers now mr. Hannah testified at the hearing and he testified that that his statements in the 2005 report were accurate and there was never any it never was rebutted by any other evidence in the case so we have mr. Edmonds saying well I didn't know what it was true or not you had the author of it saying it was accurate at the time and you have no evidence from the administrator that it's not accurate and so I'm using this to illustrate why those findings of dishonesty in that situation were against the yeah I know there's a merger right between maybe poor judgment or right and and whether or not it segues into dishonesty how and I just want to get these three specifically interest right I mean doesn't classifying something as an interest payment act like things are going well you know with an investment right it could yes and and in this case I'm going to tell you what the evidence was and the court will decide but the the evidence was that mr. Edmonds didn't know whether it was interest or not mr. Hannah told him what to write and gave him the amounts of the checks to send this bores never testified that she was misled and that review board said that the administrator failed to put in evidence that it wasn't interest so they found it on the on the clear and convincing standard that was improved that's that's the analysis it's very simply condensed and compressed into the review board final thank you that one of the differences and a key difference in this case between carabiners is that as trustee mr. Edmonds was found to have never benefited in any way from the mistakes he made it as a trustee and so I think that we ask you to look at the the question of intent the manifest weight the burdens clear convincing it gets a little I think building upon the clear and convincing burden I think the review board was absolutely spot-on in making his findings except on two things and I I'd like to talk about those so they're not forgotten there's a count five and a count seven which are our two counts one was that there was a delay in closing the estate and the allegation was a 1.3 diligence the delay in closing is this was charged in the complaint as the duties of an executor in paragraphs 811 and paragraph 62 the administrator charged that I LCS 5 slant 24 requires an executor to file an accounting and then in paragraph 63 he alleges failed to file the accounting that case was constructed that count was constructed under the duties of an executor and the tax problem that caused the delay explained in evidence so you'll see that in evidence mr. Edmonds sent 70 or 75 thousand dollars the IRS to pay estate taxes for the estate they refunded sixty thousand which he then put into the trust and then sent checks to this to the school from that the IRS then came to him said we made a mistake we want the money back and he was trying to struggle with fixing that for a long long time because when he was in a cash trap trust situation and he given all the assets to the trust he didn't have the money so he decided to negotiate with the IRS in 2008 when he was relieved of his duties as trustee he was left on as the executor he was left on to negotiate specifically and this is why st. Mark's has independent counsel he was left on to try to negotiate and fix that problem with the IRS so you see it really is unfair and against the manifest way to say that he was a cause of culpable delay under rule 1.3 because it was charged as an executor and the fact show that he didn't delay he was trying to fight with the IRS to fix a problem finally in the trust account that the trust account is in count seven this is a situation if you look at the complaint it looks bad because they show checks written from the trust account to pay off debts of mr. Edmonds looks bad but when you ask mr. Edmonds what happened in the evidence shows he got fees he does personal injuries and he had fees from clients he put in the trust account which is expected he didn't disperse them promptly he held them from 1 to 13 weeks I've looked in I have found no case where a lawyer was was disciplined for using his trust account to pay bills when it was his own money and that's what that all that was and that that counts should never I don't think have been charged it should have been in other words with his own money it was his fees he earned he deposited in the trust account is a lot of times injury well oftentimes when you get a settlement check it includes a payment to the client and to the lawyer so he hasn't taken it out he was taking it out but he didn't do it promptly he delayed you wanted 13 weeks which is so de minimis and yet I think it wouldn't have been charged but even if it was a technical violation I would ask the court just to review the preamble to the rules and and and comment 19 tells us that sometimes a rule violation shouldn't result in discipline or whether discipline should arise out of a rule violation requires looking at a lot of circumstances and including you know whether the lawyer has ever been charged for misconduct in the past and all the circumstances before the court so I would say that that it was so it wasn't proven by the manifest weight that there was any hanky-panky no trustee was hurt or no client was hurt no client funds were taken and then mr. Edmonds went to the professional responsibility course given by the ARDC he's upgraded his bookkeeping and so the court is assured and reassured that that he will never hold his own funds in his trust account any longer than necessary to clear them out again I think that the administrator in this case has made references to reach fiduciary duty this courts March 14th order to the administrator was to conform this opinion this this appeal to the dictates of carabinets and I don't think the administrator really has I think the administrator is having some concern about the fact that that mr. Edmonds wasn't one time a lawyer who wrote the the will and trust and that is so unfair there's not a single proximal temporal legal or or factual relationship between the fact that he drew a trust and say 1998 and the fact that he became a successor trustee in 2000 and then handled it a certain way it wasn't charged there was no evidence like that and this pops up after carabinets in a strange way in the reply brief which talks about but for proximate causation and it's like I'm dealing again with a tort case as a carabinets case was so I appreciate the very much that the court had looked at how discipline is managed and in this this question of reaching charging breach of fiduciary duty which is so broad and difficult to defend from a respondents point of view because breach of fiduciary duty is like it's like explaining philosophy sometimes and it's it gets really convoluted there was no expert called in this case like there wasn't carabinets so no one came in to explain whether he was a bad trustee or violated rules it was it was all done as a question of law as to under the trustees act and the things that the and finally you know there is one yes there was a malpractice case and the malpractice case was settled and the settlement was entered into evidence under seal so this court has an in the record the exact settlement and then another trustee took over the trust in it we don't know today we don't know how they've managed and how they've you know been able to to find or squeeze any cash out of those those assets there was testimony in the record and no witness was found to be not credible actually in this case by Hannah that that there were all these promises but you can take mr. Hannah's testimony out of the picture there's no evidence that the trust wouldn't result in money to st. Mark's you know now and in the future we just don't know the record is closed we don't thank you very much for your time oh I may I just say it on discipline I was going to ask you I appreciate it the when you strip out the breach of everything in this case everything flowed from the breach of fiduciary duty in closing argument the administrators council said we wouldn't be here if this trusted made money and I think that's so tainted this this discipline the one year maybe the scandal part of it but the feeling that they gave my client an f-grade and trusteeship really colored the outcome I think the review board put it back in the fair context and on the 60 days but in our petition in this court and today I'm asking the court to reconsider any discipline I'm asking that that there be an order of discharge in other words a dismissal and that's why I brought up counts five and seven because the review board only had five and seven to give 60 days on those were clearly not fair or against manifest weight I think they just got overlooked in the in the big picture of whether or not this in care of I care of eat is how they should be handled together if there further questions I thank you very much thank you just a few responses to mr. McGarry's comment one was that there was no evidence that August 2005 report was false I would direct your attention to the tax return that responded filed at the year end just before at the end of four showed a two million four hundred thousand dollar value not the three million containing the letter it's really interesting to hear that respondent brought mr. Hanna is a financial advisor to this meeting mr. was the CEO of a corporation range that was in freefall they were trying to find cash and he was the financial advisor to bring to this meeting with the church struggling to find out what happened to the money mr. mr. Sloan didn't invest a range energy during his life mr. Hannah says he had a conversation with mr. Sloan wherein mr. Sloan showed some interest in range there was never such an investment during his lifetime even mr. Hannah's statement was that it might be appropriate that the trust have 10% of its value in range at hearing he said defending this investment it was a good investment was diversified because this one company range energy had lots of different wells so the fact of different wells in one company made it diverse it boggles the breach of fiduciary duties were charged in this complaint pre-care Venus cases tried pre-care Venus but the outcome is just the same we would charge it differently but we would get to the same result the and the Boers account there is evidence that in fact the investment was not an interest-bearing more secure investment and that one where surely Boers could rely on a 10% return that lasted a couple years in fact the evidence is Hannah at the trial at the ARDC hearing board admitted it was just an ordinary at-risk investment so that's why it's false and responded as he did so many times just took whatever word Hannah said and passed it on to his client it's it does inform it did inform the hearing board as to what what issues were here I don't know what council's references to a wide spread of spread of assets here almost every bit of asset here was range energy and the valuation and in the August 05 report one would have to look at other factors than just a dollar on a balance sheet a cash-strapped company burdened with a judgment trying to buy out a directly don't want there anymore and unable to produce income to respondent to pay money to this trust for the kids it's it's doesn't seem like it's much of a stretch at all the neglect of the estate that's self-inflicted damage respondent communicated the IRS he had no closing letter and he distributed money from the estate a lot of it to range and I don't disagree with counsel's statement because I don't have anything different that that refund of 79,000 the IRS went to the distribute money that much money you want you to always keep enough money to pay for taxes and that's so he caused the problem that 14 years later continued to exist and he also had a didn't do other things required state accounting and things of that nature the trust account charge I would agree it is not doesn't involve conversion of money so it's on is less serious than some but this court in 1980 and Ray Claytor said that warned the profession against the dangers of commingling and one here is that if one uses a trust account to pay the country club bills someone might think they could seize that account that isn't truly a trust account yes what you're describing here is maybe imprudent investments and maybe not very smart kinds of financial planning but is it dishonest or fraudulent conduct thank you Justice Burke I think it is absolutely dishonest and it is for the reasons I said in my opening comments the hearing board went through this in detail and when one plays something of a shell game to have the church think there's money when it's for the years you borrow it you put it in your trust account you put it in the Sloan charitable trust and you send it to them the panel correctly so why would you do that but for to deceive the church into thinking you had assets that was the beginning of when there weren't enough assets 3.8 million dollars and nothing liquid three years later so the respondent put himself in a position dug a hole mr. Hannah helped but responded just never stopped digging and of the activities that responded engaged in seemed more with Hannah towards propping up range and doing something like foreclosing on that judgment and having those assets of range sold at auction opposing counsel points out or states that there's nothing in the record to indicate that mr. Edmonds benefited anyway did no dollars flowed into his pocket does that make a difference it doesn't make a difference what makes a difference I think in the case if respondent were benefiting from deceitful conduct it would be a more severe recommendation for sanction than one year here I think what one likely motive is he had invested imprudently it's not my words he called it a terrible investment it was not hard to find that to be an accurate assessment and he faced many negatives embarrassment in his church liability which ultimately befell him and exposure of all that had transpired so his motive to lie to keep the church from understanding the issue it was successful all the way until 2008 when the diocesan attorney got involved and hired a lawyer to file a suit to remove him as trustee going back to your opening argument and something that opposing counsel had indicated that you had said well if things were successful if this investment been successful we wouldn't be here you know I and I anticipate the response to that is not so much that they were unsuccessful your point is if he had been forthright about it being unsuccessful you wouldn't be here either either of those is true if when he was if he had provided an annual accounting as the state statute requires and was forthright and forthcoming there would never have been an issue but when he engaged in the chicanery with the checks and that report he crossed a significant line and he forestalled action by the diocese and the Review Board dissent has this about right about five years by doing that so it is the that when it played out he couldn't pay the school for education he could no longer keep everything under wraps he was struggling to find a way and his choice was a bad choice thank you thank you in case number one one seven six nine six Henry John P Edmonds will be taken under advisement is agenda number 11 mr. Larkin mr. McGarry thank you for your arguments today mr. Marshall the court stands adjourned we will reconvene on Tuesday the 16th of September at 930 a.m.